IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK KEMP, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1090 |
| | § | |
| DATABANK IMX, LLC, et al. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiffs' Motion for Class Certification (Doc. 37) and Defendants BP Exploration & Production Inc. and BP Corporation North America Inc.'s (collectively, "BP") Motion to Dismiss (Doc. 39).  The court has considered the motion, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiffs' motion be **GRANTED** and Defendant BP's motion be **DENIED**.

### I.  Case Background

Plaintiffs, individually and on behalf of all other similarly situated individuals, filed this action against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., alleging that they were not paid overtime.  Plaintiffs additionally claim that they were incorrectly classified as independent contractors rather than employees.  Plaintiffs assert that Defendants' denial of wages at the federally mandated overtime

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 38.

rates for all hours worked over forty also affected other similarly situated employees. Defendant BP contends that it was not Plaintiffs' employer and moves to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6).

**A.   Procedural History**

Plaintiffs filed this lawsuit against Defendant Databank IMX, LLC ("Databank") on April 21, 2014, alleging violations of the FLSA.[2]   Defendant Databank filed its answer on May 19, 2014.[3] Plaintiffs filed an amended complaint on October 8, 2014, adding Defendant BP to their FLSA allegations as a joint employer.[4]

Plaintiffs filed a motion for conditional class certification on November 14, 2014,[5] seeking to certify the following class:

> All current and former independent contractors of [Defendant Databank], who [h]ave held the position of 'adjusters,' 'claims analysts,' 'claims adjusters,' 'government claims,' 'monitors' or 'Adjustor Vendors,' or who have performed duties similar to the duties performed by Plaintiffs . . . [w]ere paid an hourly rate of pay for their services; and [w]orked more than forty (40) hours in workweeks without being paid overtime premium wages for the hours worked over forty (40).[6]

In the motion, Plaintiffs ask the court to: (1) conditionally certify this suit as a collective action; (2) authorize Plaintiffs

---

[2]      See Doc. 1, Pls.' Compl.

[3]      See Doc. 9, Def.'s Answer.

[4]      See Doc. 27, Pls.' 1st Am. Compl.

[5]      See Doc. 37, Pls.' Mot. to Certify Class.

[6]      Id. at p. 3.

to send an approved notice of this action and a consent form to putative class members; and (3) order Defendants to produce the full name, last known address and email addresses for all potential class members.[7]

On November 20, 2014, Defendant BP filed a motion to dismiss Plaintiffs' claims against Defendant BP, arguing that Defendant BP was not Plaintiffs' employer.[8]

On December 5, 2014, Defendants Databank and BP each filed a response in opposition to Plaintiffs' motion for conditional class certification.[9]  On December 11, 2014, Plaintiffs filed a response to Defendant BP's motion to dismiss, and on December 12, 2014, Plaintiffs filed a reply to Defendants' responses in opposition.[10]

**B.**   **Factual History**

The following factual account is derived from Plaintiffs' first amended complaint and the exhibits attached to the pending motion.

In the summer of 2012, Defendants hired approximately seventy employees to work at Defendant BP's offices to perform data entry and claims processing related to the Deepwater Horizon oil spill of

---

[7]      See id. at pp. 16-18.

[8]      See Doc. 39, Def. BP's Mot. to Dismiss.

[9]      See Doc. 43, Def. Databank's Resp. to Pl.'s Mot. to Certify Class; Doc. 44, Def. BP's Resp. to Pl.'s Mot. to Certify Class.

[10]     See Doc. 45, Pls.' Resp. to Def. BP's Mot. to Dismiss; Doc. 46, Reply to Defs.' Resp. to Pl.'s Mot. to Certify Class.

2010.[11]

Plaintiffs' primary job functions were to enter and process data provided by Defendants of claims related to damages alleged by individuals and businesses.[12] Plaintiffs each signed an independent contractor agreement with Defendant Databank that stated they would provide independent claims adjudication, and that their services would be "directed and managed in all respects by [Defendant BP] employees to include the setting of hours worked and all work procedures . . . ."[13] Plaintiff Kemp informed Paul Leftwich, an individual apparently employed by BP, in advance regarding days he would not be able to work.[14]

The complaint alleges that Plaintiffs and prospective class members were not compensated at a rate of one-and-a-half times their regular rate for every hour worked over forty per week.[15] While Plaintiffs and similarly situated individuals regularly worked more than forty hours, they were paid at their regular hourly rate.[16]

The complaint alleges that although they were classified as

---

[11]   See Doc. 27, Pls.' 1st Am. Compl. ¶ 23.

[12]   See id. at ¶ 24.

[13]   See Doc. 27-1, Ex. 36 to Pls.' 1st Am. Compl., Independent Contractor Agreement pp. 110-15.

[14]   See Doc. 27-1, Exs. 11-17, 19-20, 22 to Pls.' 1st Am. Compl., email exchanges with Paul Leftwich.

[15]   See Doc. 27, Pls.' 1st Am. Compl. ¶ 35.

[16]   See id. at ¶ 75-76.

4

independent contractors, Plaintiffs were required to perform all work at Defendant BP's offices and were subject to Defendants' approval for any time off work.  Plaintiffs were required to work more than forty hours of work per week and were not permitted to conduct other business while on Defendant BP's property.[17] Plaintiffs aver that Defendants provided all materials and equipment, including email addresses with an "@bp.com" domain name.[18]

## II.  Legal Standard

### A.  Rule 12(b)

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

---

[17]    <u>See</u> Doc. 27-1, Ex. 31 to Pls.' 1st Am. Compl., Email re: business policy p. 93.

[18]    <u>See</u>  Doc. 27, Pls.' 1st Am. Compl. ¶¶ 53-55.

(2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
Plausibility means that the factual content "allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 556 U.S. 678.  A plaintiff must
provide "more than labels and conclusions" or "a formulaic
recitation of the elements of a cause of action." Twombly, 550
U.S. at 555.  In other words, the factual allegations must allow
for an inference of "more than a sheer possibility that a defendant
has acted unlawfully." Iqbal, 556 U.S. 678.

**B.  FLSA**

The FLSA requires covered employers to pay non-exempt
employees for hours worked in excess of defined maximum hours.  29
U.S.C. § 207(a).  It allows employees to bring an action against
their employers for violation of its hour and wage provisions. See
29 U.S.C. §§ 215-216.  An employee may bring an action against his
employer on "behalf of himself . . . and other employees similarly
situated.  No employee shall be a party plaintiff to any such an
action unless he gives his consent in writing to become a party and
such consent is filed in the court in which such action is
brought." 29 U.S.C. § 216(b).  Courts have the authority to
implement the representative action process by facilitating notice
to potential plaintiffs, i.e., to persons alleged to be "similarly
situated" to the named plaintiff(s).  Hoffman-La Roche, Inc. v.
Sperling, 493 U.S. 165 (1989).

6

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990). See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[19]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (citing Mooney, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1214). Next, once discovery has largely been completed, and, thus, more information on the case

_____

[19]    Mooney v. Aramco Services Co. was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action.  Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> Shushan espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23].  Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA].  In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.  Under this methodology, the primary distinction between a . . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results.  In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

Mooney, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single action under Section 216(b).  Acevedo, 600 F.3d at 518-19.  Although it has stated that not all class action standards are applicable to

8

Section 216(b) actions, it has explicitly left open the question of whether the Lusardi approach, the Shushan approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action. Id. (citing Mooney, 54 F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits under Section 216(b). See, e.g., Tolentino v. C & J Spec-Rent Servs., Inc., 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010) (collecting cases). The Lusardi approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) (holding that "the FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures"). This court, therefore, will analyze Plaintiffs' claims using the Lusardi method.

The present case is at the "notice stage" of the Lusardi

9

analysis.   At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members.   <u>Mooney</u>, F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the <u>Lusardi</u> analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification.   Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.   <u>See, e.g.</u>, <u>Cantu v. Vitol, Inc.</u>, Civil Action No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); <u>Tolentino</u>, 716 F. Supp. 2d at 653.   Other courts, however, have rejected the third, non-statutory element.   <u>See, e.g.</u>, <u>Dreyer v. Baker Hughes Oilfield Operations, Inc.</u>, Civil Action No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); <u>Heckler v. DK Funding, LLC</u>, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).

The court agrees that Plaintiffs need not present evidence of the third element at this stage of the certification process. There are several reasons for this.   First, as already stated, this

element is not a statutory requirement at this stage.  <u>See</u> 29
U.S.C. § 216(b).  Second, this element has not been required, or
even discussed, by any higher court opinion that this court has
been able to find or to which the parties have cited.  Rather, the
Fifth Circuit's discussion of the <u>Lusardi</u> approach only requires,
at the first stage, that "putative class members' claims [be]
sufficiently similar to merit sending notice of the action to
possible members of the class."  <u>See</u> <u>Acevedo</u>, 600 F.3d at 519
(citing <u>Mooney</u>, 54 F.3d at 1213-14).

   Third, unlike under Rule 23, there is no numerosity
requirement in an FLSA class action lawsuit under the <u>Lusardi</u>
approach.  <u>See, e.g.</u>, <u>Badgett v. Tex. Taco Cabana, L.P.</u>, Civil
Action No. H-05-3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14,
2006) (Lake, J.) (unpublished) (citing <u>Mooney</u>, 54 F.3d at 1214,
n.8) ("[A]t the notice stage [in an FLSA action using the <u>Lusardi</u>
approach], courts appear to require nothing more than substantial
allegations that the putative class members were together the
victims of a single decision, policy, or plan."  (internal
quotations omitted)).

   Finally, this element, requiring evidence of purported class
members who are willing to join a class action before an
appropriate class is even determined, is dissonant with the Supreme
Court's directive that the FLSA be liberally construed to effect
its purposes.  <u>See</u> <u>Tony & Susan Alamo Found. v. Sec'y of Labor</u>, 471

11

U.S. 290, 296 (1985).  Liberally construing the FLSA to effect its purposes, the court finds that it is enough for Plaintiffs to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually wish to join the lawsuit.

Based on these considerations, the court will address only the first two elements of the <u>Lusardi</u> test.

### III.  Analysis

### A.  <u>Defendant BP's Motion to Dismiss</u>

Defendant BP argues that Plaintiffs fail to state a claim because Plaintiffs do not sufficiently allege that Defendant BP was Plaintiffs' employer.  Plaintiffs respond that the FLSA employs a broad definition of "employer," and that Plaintiffs' amended complaint alleged sufficient facts to raise a claim that Defendant BP was Plaintiffs' joint employer.

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

The Fifth Circuit utilizes the "economic reality" test to determine whether an employer/employee relationship exists.  <u>Gray v. Powers</u>, 673 F.3d 352, 354 (5th Cir. 2012).  To determine whether an entity is an employer, the court must consider whether the alleged employer "(1) possessed the power to hire and fire the employees; (2) supervised and controlled employee work schedules or

conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. (quoting Williams v. Henagan, 595 F.3d 610, 620 (5th Cir. 2010). The absence of one factor is not necessarily dispositive, but the absence of all factors is fatal to the inquiry. Id. at 357. The touchstone is dependency, or whether "the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir. 1979) (quoting Usery v. Pilgrim Equip. Co., Inc., 527 F.2d 1308, 1311 (5th Cir. 1976)).

Under the FLSA, a single employee may be jointly employed by multiple employers. 29 C.F.R. § 791.2(a). Joint employment is considered to exist in situations where the employee "performs work which simultaneously benefits two or more employers," and "where one employer is acting directly or indirectly in the interest of the other employer . . . in relation to the employee," or "where the employers are not completely disassociated with respect to the employment of a particular employee . . . by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b)(2-3). In the context of a joint employment claim, the court considers:

> (1) whether the employment takes place on the premises of
> the company; (2) how much control the company exerts over
> the employees; (3) whether the company has the power to
> fire, hire, or modify the employment condition of the

13

employees; (4) whether employees perform a 'specialty job' within the production line; and (5) whether the employees may refuse to work for the company or work for others.

Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669-670.

Defendant BP argues that Plaintiffs' complaint fails to meet the economic realities test.  It argues that Plaintiffs have made only conclusory allegations that Plaintiffs were terminated at the request of Defendant BP, and have specifically not argued that Defendant BP supervised or controlled work schedules or conditions, determined the rate and method of payment, or maintained employment records.

Defendant BP also relies on two cases where Defendant BP was found not to be an employer for the purposes of the FLSA.  In Oberc v. BP PLC, Civil Action No. H-13-1382, 2013 WL 6007211 (S.D. Tex. 2013), the district court found that an attorney hired by a contractor was not employed by Defendant BP under the economic realities test, where the attorney offered no facts that Defendant BP was involved in his firing, maintained employment records, or set the conditions of his employment and wages.  Id. at *6.  In Altier v. Worley Catastrophe Response, LLC, Civil Action No. 11-241, 2011 WL 1791292 (E.D. La. 2011), the district court found that only the first economic reality factor was addressed by the plaintiff's complaint, and that the plaintiff's offered no facts or allegations that established dependency.  Id. at *3.

Plaintiffs respond that their pleading and exhibits contain

14

information sufficient to meet all four prongs of the economic realities test, and that the circumstances and evidence in this case differentiates it from <u>Oberc</u> and <u>Altier</u>.

Plaintiffs argue that Defendant BP possessed the power to hire and fire Plaintiff Kemp and similarly situated individuals based on (1) the averment that Defendant BP requested that Plaintiffs be terminated; and (2) an email stating that all business performed at Defendant BP's site must be related to Defendant BP's business and that violations of this policy would result in termination.

In support of the second factor, that Defendant BP supervised and controlled their work and scheduling, Plaintiffs cite to their contracts with Defendant Databank that stated that Plaintiffs' services would be "directed and managed in all respects by [Defendant BP] employees to include the setting of hours worked and all work procedures." Plaintiffs also point to several emails from Defendant BP employees directing specific aspects of Plaintiffs' work, and communications between Plaintiff Kemp and an employee of Defendant BP regarding Kemp's work schedule. Plaintiffs offer no evidence that Defendant BP determined the rate and method of payment, as described by the third factor, but argue that discovery will show that Defendant BP was responsible for determining Plaintiffs' pay.

In support of the fourth factor, maintaining employment records, Plaintiffs argue that they have produced evidence that

15

Defendant BP maintained employment records based on emergency contact information, IT records, and scheduling records of Plaintiffs and similarly situated adjustors.

Plaintiffs additionally argue that the facts of this case are distinguishable from those in Oberc and Altier, and cite to Schlesinger v. ES & H, Inc., Civil Action No. 11-294, 2011 WL 3900577 (E.D. La. 2011), a similar case where the district court found that there was enough evidence to support a joint employer claim where defendants assigned work and controlled the number of hours plaintiff could work on-site. Id. at *4. In Schlesinger, the court concluded that collectively issuing credentials for work site access, exchanging employee records, and issuing equipment supported a finding of joint employers. Id.

The court finds that Plaintiffs have made a minimum showing to establish that Defendant BP was a joint employer. Unlike the circumstances in Oberc, here, Plaintiffs have pled specific information that goes beyond speculation and legal conclusions. In particular, Plaintiffs produced evidence that Defendant BP directed and managed Plaintiffs' activities, their hours worked, and work procedures, and that Defendant BP maintained scheduling records. Similar to Schlesinger, Defendant BP controlled access and issued credentials for on-site work, and exclusively provided the materials necessary for Plaintiffs' work.

**B. Class Certification**

16

Defendants urge the court to reject Plaintiffs' request for conditional class certification.  They argue that: (1) Plaintiffs have offered no evidence that they were subject to a uniform policy; and (2) Plaintiffs have offered no evidence that they are "similarly situated."  The court addresses Defendants' arguments in turn.

Defendants contend that Plaintiffs have not established that a uniform pay policy existed and that Plaintiffs and the potential class were therefore not "the victims of a single decision, policy, or plan."  See Mooney, 54 F.3d at 1214 & n.8.  The remedial nature of the FLSA strongly encourages cases to proceed collectively.  In re Wells Fargo Wage and Hour Emp't Practices Litig. (No. III), Civil Action No. H-11-2266, 2012 WL 3308880 *24 (S.D. Tex. 2012) (unpublished).

Defendants focus on Plaintiff Kent's individual requests for time off as evidence that there was no standard policy.  However, Plaintiffs have based their FLSA claims on being denied overtime pay, not any scheduling policy of Defendant Databank.  Plaintiffs have offered evidence that Plaintiff Kemp and several opt-in plaintiffs were paid identically on a per-hour basis.  Plaintiff Kemp and opt-in plaintiffs have thus sufficiently alleged that they were the victims of a single policy or plan as required under the FLSA.

Second, Defendant Databank contends that Plaintiffs have

offered no evidence that they were similarly situated. Defendant Databank relies on Andel v. Patterson-UTI Drilling Co., LLC, 280 F.R.D. 287 (S.D. Tex. 2012) for the proposition that determining whether workers are employees or independent contractors is a determination requiring individualized inquiry. Id. at 290. Defendant Databank points to records indicating that while Plaintiff Kemp contracted individually with Defendant Databank, other opt-in plaintiffs contracted as LLCs and other small business enterprises. Defendant Databank argues that the court would "have to inquire into potential tax fraud by the corporations and LLCs" and that the court might conclude that opt-in plaintiffs "should be suing the companies that employed them."[20] Defendant Databank also argues that Plaintiffs are not similarly situated because individual plaintiffs had varied living and personal expenses.[21]

Plaintiffs respond that other courts have held that under the remedial nature of the FLSA, individual corporations have been held to be employees as part of similar class actions in other circuits. See, e.g., Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 81 (D.N.J. 2014); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198 (S.D.N.Y. 2006). Plaintiffs further maintain that individual living expenses and costs are irrelevant and do not effect the court's calculus for determining if a potential class is similarly situated.

---

[20]    Doc. 43, Def. Databank's Resp. to Pl.'s Mot. to Certify Class p. 14.

[21]    See id.

The court is not required to find uniformity in every aspect to determine that a class of employees are similarly situated.  In re Wells Fargo, 2012 WL 3308880 at *24.  Potential class members are considered similarly situated to the named plaintiffs if they are similarly situated in terms of job requirements and payment provisions.  Heeg v. Adams Harris, Inc., 907 F. Supp.2d 856, 862 (S.D. Tex. 2012).  If the job duties among a putative class vary significantly, class certification should be denied.  Id.

Here, the court finds that Plaintiffs have offered evidence that others were similarly situated.  Unlike Andel, all plaintiffs worked at the same location and in the same position.  See Andel, 280 F.R.D. at 290.  Further, unlike Andel, Plaintiffs did not maintain independent expenses, as Defendants provided all equipment and facilities.  See id.  The court therefore does not need to make individual inquiries as to whether each potential class member was an employee or an independent contractor.  Similarly, the fact that some opt-in plaintiffs contracted as LLC's or other entity does not preclude the court from finding them similarly situated.  Significantly, all prospective class members worked together at the same location, conducted the same job, and agreed to the same payment provisions.  The court likewise finds Defendants' arguments that prospective class members have different expenses and hours worked to be unavailing, as similarly situated class members need not be identical to be similarly situated.  The court finds that

19

Plaintiffs have shown that there is a reasonable belief that there is a class of persons similarly situated to Plaintiffs.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiffs' Motion for Conditional Class Certification be **GRANTED** and Defendant BP's Motion to Dismiss be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 27th day of March, 2015.

_____
U.S. MAGISTRATE JUDGE